UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI RANKANKAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JPMORGAN CHASE BANK, N.A., et al.,<br><br>　　　　Defendants. | Case No. 16-cv-01694-JCS<br><br>**ORDER VACATING HEARING AND GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 17 |

## I.　INTRODUCTION

Plaintiff Ali Rankankan brought this action in the California Superior Court for Contra Costa County alleging several claims arising from the foreclosure of certain property in San Ramon, California. Defendant JPMorgan Chase Bank, N.A. ("Chase") removed to this Court, asserting diversity jurisdiction on the basis that Defendant MTC Financial Inc. d/b/a Trustee Corps ("MTC"), a California corporation, was fraudulently joined. Rankankan now moves for a preliminary injunction and to remand to state court, and Chase and MTC each move to dismiss. The Court finds the Motion to Remand suitable for resolution without oral argument and VACATES the hearing previously set for June 24, 2016. For the reasons discussed below, Rankankan's Motion to Remand is GRANTED. This Court lacks jurisdiction over the case in its present form and thus does not reach the remaining motions.[1]

## II.　BACKGROUND

### A.　Allegations of the Complaint

Rankankan's allegations are generally taken as true at the pleading stage, and are therefore recited here as fact. Nothing in this Order should be construed as resolving any issue of fact that

---

[1] All parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

might be disputed at a later stage of the case.

At all times relevant, Rankankan resided in Contra Costa County, California, and owned property at 9640 Acosta Boulevard in San Ramon (the "Property"). Compl.[2] ¶ 1. Around February of 2005, Rankankan obtained a home equity line of credit (the "First HELOC") from Washington Mutual Bank ("WaMu")—a predecessor to Defendant Chase—in exchange for executing a promissory note secured by a deed of trust (the "WaMu Deed of Trust") on the Property. *Id.* ¶ 9. The WaMu Deed of Trust provided that the trustee would "reconvey the Property to the person entitled thereto, on written request of [WaMu], or following satisfaction of the obligation secured" by the deed. *Id.* ¶ 10.

About a year later, in February of 2006, Rankankan refinanced his loan through non-party GreenPoint Mortgage Funding, Inc. ("GreenPoint"), which paid the full balance to WaMu. *Id.* ¶ 12. Rankankan also completed various administrative steps as instructed by WaMu to close the First HELOC and ensure that GreenPoint would have the first priority lean on the Property, which was a requirement of the refinance. *Id.* ¶¶ 12−14. Rankankan and GreenPoint believed that WaMu had closed the First HELOC and had recorded a reconveyance. *Id.* ¶¶ 13−14. GreenPoint subsequently recorded its own deed of trust (the "GreenPoint Deed of Trust") to secure the refinance, which it later assigned to U.S. Bank, N.A. *Id.* ¶¶ 15−16.

In March of 2006, WaMu provided a second home equity line of credit (the "Second HELOC") to Rankankan, but did not inform Rankankan or GreenPoint that it had neither closed the First HELOC nor recorded a reconveyance. *Id.* ¶ 21. When Rankankan exceeded the credit limit of the Second HELOC, WaMu extended credit on the First HELOC without informing Rankankan that it was doing so. *Id.* ¶ 22. According to Rankankan, since the First HELOC should have been closed, any debt that he incurred to WaMu beyond the limit of the Second HELOC should have been unsecured. *See id.*

In September of 2011, Chase, as successor to WaMu, recorded a notice of default based on a first position lien on the Property. *Id.* ¶ 17. U.S. Bank, believing that it was entitled to the first

---

[2] Rankankan's Complaint appears in the record as Exhibit A to Chase's Request for Judicial Notice in support of its Notice of Removal (dkt. 1-2).

1    position lien, sued Chase and Rankankan for WaMu's failure to record a reconveyance after
2    WaMu was paid in full on the First HELOC. *Id.* ¶ 18.  In April of 2012, U.S. Bank dismissed
3    Rankankan from that action and filed notice that it had reached a conditional settlement with
4    Chase. *Id.* ¶ 19.  Chase then recorded a subordination of the WaMu Deed of Trust pursuant to a
5    confidential settlement agreement with U.S. Bank, giving priority to the GreenPoint Deed of
6    Trust. *Id.* ¶ 20.  Rankankan did not consent to or know the terms of the settlement. *See id.*
7    Rankankan alleges that after Chase recorded the subordination, "TITLE CORP informed
8    RANKANKAN that the foreclosure would not go forward," and Rankankan relied on that
9    representation. *Id.* ¶ 47.  In context and based on Rankankan's present arguments, "TITLE
10   CORP" apparently refers to Defendant MTC.

11       Chase recorded an assignment in 2014 formally assigning the beneficial interest under the
12   WaMu Deed of Trust to Chase. *Id.* ¶ 23.  In July of 2015, Chase recorded a substitution of trustee
13   designating MTC as the trustee under the WaMu Deed of Trust. *Id.* ¶ 24.

14       On February 16, 2016, Chase and MTC recorded a notice of trustee's sale based on the
15   WaMu Deed of Trust. *Id.* ¶ 25.  Rankankan provided Chase with evidence that the First HELOC
16   was paid in full in 2006 and should have been closed, but Chase has refused to rescind either the
17   notice of default[3] or the notice of sale. *Id.* ¶ 26.

18       The Complaint includes eleven claims: (1) fraud; (2) breach of contract; (3) wrongful
19   foreclosure; (4) "failure to record reconveyance"; (5) slander of title; (6) quiet title; (7) negligent
20   misrepresentation; (8) unfair business practices; (9) intentional infliction of emotional distress;
21   (10) negligent infliction of emotional distress; and (11) declaratory relief. *Id.* ¶¶ 27−104.  Chase is
22   named as a defendant to all claims; "Title Corp" is named as a defendant to all claims except those
23   for fraud, breach of contract, failure to record, and unfair business practices; and U.S. Bank and all
24   other persons claiming an interest in the property are named as defendants to the claims to quiet
25   title and for declaratory relief. *See id.*  The term "Title Corp" is not defined in the Complaint, but
26   based on Rankankan's arguments, and because MTC is the only defendant besides Chase and U.S.

---

[3] This allegation regarding the notice of default apparently refers to the notice recorded in 2011. *See* Compl. ¶ 17.

3

1  Bank named in the Complaint, the Court understands references to "Title Corp" to denote MTC.
2  Rankankan has voluntarily dismissed U.S. Bank from this action, leaving only Chase and MTC as
3  named defendants.  *See* Notice of Voluntary Dismissal (dkt. 31).

### B. Notice of Removal and Motion to Remand

Rankankan filed this action in state court on March 4, 2016, and Chase[4] removed to this Court on April 4, 2016 asserting diversity jurisdiction. *See generally* Notice of Removal (dkt. 1). Chase concedes that MTC, like Rankankan, is a citizen of California for purposes of diversity jurisdiction, but contends that as the trustee under a deed of trust, MTC is merely a "nominal defendant against which no affirmative relief is sought." *Id.* ¶¶ 8−10.  While Chase acknowledges that instances of "Title Corp." in the Complaint refer to MTC, *see id.* ¶ 13 (acknowledging the allegation that "MTC, at some point, informed Plaintiff that a foreclosure sale would not occur" (citing Compl. ¶ 47)), Chase argues that Rankankan's allegations regarding MTC are not sufficient to state a claim, and that MTC is therefore fraudulently joined. *Id.* ¶¶ 11−13.

Rankankan moves to remand, arguing that MTC is a legitimate defendant and therefore destroys diversity. *See generally* Remand Mot. (dkt. 17).  As described in Rankankan's Motion, his claims against MTC arise primarily from MTC's alleged "material misrepresentation . . . regarding the status of foreclosure proceedings and Chase's intent to proceed." *Id.* at 6. Rankankan contends that the burden is on Chase to establish this Court's jurisdiction, and that Chase's Notice of Removal fails to establish that MTC is a sham defendant from which Rankankan has "'no possibility of recovery.'" *Id.* at 9−10 (quoting *TPS Utilicom Servs., Inc. v. AT & T Corp.*, 223 F. Supp. 2d 1089, 1102 (C.D. Cal. 2002)).[5]

Opposing remand, Chase argues that Rankankan cannot state a claim against MTC because "the alleged communications were committed by [MTC's] predecessor, Ticor Title Company, not MTC itself," and because the relevant statute of limitations for negligent misrepresentation is two

---

[4] Although not addressed by any party, the Court notes that there is no indication that all defendants joined in Chase's removal, as required by 28 U.S.C. § 1446(b)(2)(A).

[5] Rankankan's Motion erroneously cites *McCabe v. General Foods Corp.*, 811 F.2d 1336 (9th Cir. 1987) for this quotation, but the passage quoted does not appear in that opinion and instead originates in the district court decision cited above.

years, which has long since expired for MTC's alleged misrepresentations. Remand Opp'n (dkt. 25) at 2−3. The former argument relies on a deed of trust submitted for judicial notice in support of MTC's Motion to Dismiss, which lists Ticor Title Company as the trustee in 2005. *See* MTC Request for Judicial Notice (dkt. 14) Ex. B. Chase also argues that MTC's communications related to foreclosure filings are privileged under California Civil Code sections 2924(d) and 47(c), and that MTC's only proper role as a nominal defendant due to its status as trustee is not relevant to the analysis of diversity jurisdiction. *Id.* at 3−5. MTC has not filed its own opposition to remand.

In his Reply, Rankankan contends that the statute of limitations has not expired because although MTC told him in 2012 that Chase would not proceed with a foreclosure sale, he had no reason to know of the false or misleading nature of that statement—and thus his claim did not accrue—until 2016, when Chase instructed MTC to record a notice of trustee's sale. Remand Reply (dkt. 30) at 2−3. As for Chase's privilege argument, Rankankan responds that the alleged misrepresentation was not within the scope of "mailing, publication, and delivery" of required notices protected by section 2924(d), or otherwise within MTC's duties as trustee, and therefore was not privileged. *Id.* at 3−4. Rankankan also argues that although MTC did not become trustee under the deed of trust until 2015, his Complaint adequately alleges that MTC was the "foreclosure trustee" in 2012, a distinct position serving as the authorized agent of the beneficiary (here, Chase). *Id.* at 4−6. Rankankan submits for judicial notice a notice of default dated September 7, 2011, showing yet another entity—Title Trust Deed Service Company—as the foreclosure trustee as of that date, but argues that changing the foreclosure trustee does not require any recorded document, and that the Court should therefore accept at this stage his allegation that MTC was the foreclosure trustee by the time of the alleged misrepresentation in 2012. *Id.* at 6−8 (citing Rankankan Request for Judicial Notice (dkt. 30-1) Ex. B).

Chase does not assert any other basis for jurisdiction besides diversity, and Rankankan does not dispute that the amount-in-controversy requirement is satisfied.

### C. Other Pending Motions

In addition to Rankankan's Motion to Remand, the parties have filed several other motions

that the Court does not reach for lack of jurisdiction.

Rankankan moves for a preliminary injunction, replacing a temporary restraining order entered by the state court, and Chase opposes that Motion, arguing that after Rankankan refinanced (and thus repaid) the First HELOC in 2006, he did not actually close it but instead drew an additional $649,499.18 on that line of credit in the following years, justifying Chase's notice of default and subsequent notice of trustee's sale after Rankankan failed to pay his debt. *See* Prelim. Inj. Mot. (dkt. 16); Prelim. Inj. Opp'n (dkt. 28). The parties stipulated to a briefing schedule for that Motion, subject to the Court setting a hearing date, and agreed that the state court's temporary restraining order would remain in effect until this Court ruled on the request for a preliminary injunction. Stipulation (dkt. 8). The Court adopted that stipulation. Dkt. 12. Chase filed its Opposition one week after the deadline, without explanation. Rankankan filed a Reply that same day asking that the Court disregard Chase's late-filed Opposition, or in the alternative, grant Rankankan leave to file a separate brief addressing Chase's arguments. Prelim. Inj. Reply (dkt. 29).

MTC moves to dismiss on the grounds that it is not plausible that MTC was involved in any way in Rankankan's dealings with Chase in 2012, that Rankankan has not adequately alleged prejudice from or justifiable reliance on the purported misrepresentation, that MTC's conduct was privileged, and that certain of Rankankan's claims (such as for negligent infliction of emotional distress) are not cognizable under California law, among other arguments. *See generally* MTC Mot. (dkt. 14); MTC Reply (dkt. 27). Chase also moves to dismiss. *See generally* Chase Mot. (dkt. 24); Chase Reply (dkt. 38). Rankankan voluntarily dismissed U.S Bank without prejudice after U.S. Bank filed a motion to dismiss. *See generally* U.S. Bank Mot. (dkt. 21); Notice of Voluntary Dismissal (dkt. 31).

### III.    ANALYSIS

#### A.    Legal Standard for Remand

Federal courts have limited subject matter jurisdiction, and may only hear cases falling within their jurisdiction. Generally, a defendant may remove a civil action filed in state court if the action could have been filed originally in federal court. 28 U.S.C. § 1441. The removal

1  statutes are construed restrictively so as to limit removal jurisdiction. *Shamrock Oil & Gas Corp.*
2  *v. Sheets*, 313 U.S. 100, 108−09 (1941). The Ninth Circuit recognizes a "strong presumption
3  against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotations
4  omitted). Any doubts as to removability should be resolved in favor of remand. *Matheson v.*
5  *Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). The defendant bears the
6  burden of showing that removal is proper. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th
7  Cir. 2004).

### B. Legal Standard for Diversity Jurisdiction and Fraudulent Joinder

Chase asserts that this Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. In relevant part, that statute provides federal courts with jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" that are between "citizens of different States." 28 U.S.C. § 1332(a). Diversity jurisdiction under § 1332(a) "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

There is no dispute here that the parties named in Rankankan's Complaint do not meet that requirement because Rankankan and MTC are both citizens of California. Chase argues instead that to the extent that MTC is named in its role as trustee under a deed of trust, it is a mere nominal defendant irrelevant for diversity, and to the extent MTC is named for its own purported wrongdoing, it should be disregarded as a sham defendant. *See* Notice of Removal ¶¶ 8−11. The parties' briefs focus on the latter argument.

"[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "The term 'fraudulent joinder' is a term of art, used for removal purposes, and does not connote any intent to deceive on the part of plaintiff or his counsel." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 n.2 (N.D. Cal. 2001).

"Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the

state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Just as there is a presumption against removal, there is a "general presumption against fraudulent joinder." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009). When analyzing the issue of fraudulent joinder, "[a]ll doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand, and a lack of clear precedent does not render the joinder fraudulent." *Krivanek v. Huntsworth Grp. LLC*, No. 15-CV-02466-HSG, 2015 WL 5258788, at *2 (N.D. Cal. Sept. 9, 2015) (citation and internal quotation marks omitted). Accordingly, the Court must grant the motion "unless the defendant shows that the plaintiff would not be afforded leave to amend [the] complaint to cure [the] purported deficiency." *Rieger v. Wells Fargo Bank, Nat. Ass'n*, No. 3:13-0749-JSC, 2013 WL 1748045, at *3 (N.D. Cal. Apr. 23, 2013) (second alteration in original) (citation and internal quotation marks omitted); *see also Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) (stating that remand is proper where "there is a non-fanciful possibility that plaintiff can state a claim").

The existence of federal jurisdiction is generally determined from the plaintiff's pleadings. *See Ritchey*, 139 F.3d at 1318. On the issue of fraudulent joinder, however, a defendant is "entitled to present the facts showing the joinder to be fraudulent." *Morris*, 236 F.3d at 1067. If factual issues are in dispute, the Court must resolve "all disputed questions of fact . . . in the plaintiff's favor." *Hornby v. Integrated Project Mgmt., Inc.*, No. C 14-04331 LB, 2014 WL 7275179, at *5 (N.D. Cal. Dec. 22, 2014) (citing *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989)). While courts usually may not decide the merits of an affirmative defense to determine whether a plaintiff's claims obviously fail under the settled rules of the state, courts may consider procedural bars such as statutes of limitation. *Hunter*, 582 F.3d at 1045 (citing *Ritchey*, 139 F.3d at 1319).

**C.     Chase Has Not Demonstrated That MTC Is Fraudulently Joined**

Chase raises significant questions as to Rankankan's ability to state a claim against MTC. *See generally* Remand Opp'n. Given that MTC did not become the trustee under the deed of trust until several years after the alleged 2012 misrepresentation, and a different company was serving

8

as the foreclosure trustee in September of 2011, *see* Rankankan Request for Judicial Notice Ex. B, there is reason to question whether MTC actually had any role in the parties' controversy in 2012. Given that the alleged misrepresentation occurred in 2012, there is reason to question whether this action filed in 2016 should be barred by California's applicable two-year statute of limitations. MTC's Motion to Dismiss also raises legitimate concerns, such as whether Rankankan has adequately pleaded that his reliance on the alleged misrepresentation was reasonable, whether it was actually a misrepresentation to state that Chase would not proceed with a foreclosure sale when Chase in fact did not proceed with foreclosure for several years, and whether Rankankan has adequately pleaded that he could have averted foreclosure but for the alleged misrepresentation.

Nothing in Chase's briefing regarding remand or MTC's briefing regarding dismissal, however, establishes with the degree of certainty required for finding fraudulent joinder that Rankankan *cannot* state a claim against MTC. Even assuming for the sake of argument that Rankankan's claims against MTC warrant dismissal as currently pleaded, Rankankan would be entitled to leave to amend. For example, while the judicially noticeable fact that a different company served as foreclosure trustee in 2011 might suggest that MTC did not have a role in the controversy until it became trustee under the deed of trust in 2015, the record does not conclusively show whether MTC was the foreclosure trustee in 2012, and Rankankan could conceivably amend to more clearly allege that MTC held that role at that time. And while the time period between the alleged 2012 misrepresentation and the 2016 notice of sale might implicate the statute of limitations, Rankankan makes a colorable argument that he did not have reason to know that MTC's alleged statement was misleading until Chase moved forward with a sale, and could conceivably allege additional facts in an amended complaint to support his position that the claim did not accrue until that time.

District courts have repeatedly held that mere failure to state a claim is not sufficient to establish fraudulent joinder if a plaintiff would be entitled to leave to amend to cure any deficiency. *See, e.g.*, *Suelen v. Wells Fargo Bank, N.A.*, No. C-13-002 MEJ, 2013 WL 1320697, at *3 (N.D. Cal. Apr. 1, 2013); *Rieger*, 2013 WL 1748045, at *3; *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009); *Burris v. AT & T Wireless, Inc.*, No. C 06-02904 JSW,

2006 WL 2038040, at *1 (N.D. Cal. July 19, 2006).  This standard gives effect to the established "presumption against fraudulent joinder," *Hunter*, 582 F.3d at 1046 (citation omitted), and the rule that "[w]here doubt regarding the right to removal exists, a case should be remanded to state court," *Matheson*, 319 F.3d at 1090.  So long as Rankankan *might* be able to amend to state a viable claim against MTC, this Court's jurisdiction is in doubt, while the California Superior Court's jurisdiction over the case is unquestionable.  Further, while this Court has some authority under the fraudulent joinder doctrine to determine whether Rankankan has "obvious[ly]" failed to state a claim against MTC, *see Morris*, 236 F.3d at 1067, reviewing multiple rounds of amended pleadings to parse the sufficiency of those claims would cross the line from merely conducting that threshold inquiry to instead presiding over a dispute under state law between two California citizens, which would fall outside the scope of § 1332's grant of jurisdiction.  The Court therefore agrees with decisions holding that remand is warranted under these circumstances, and GRANTS Rankankan's Motion.

## IV. CONCLUSION

For the reasons stated above, Rankankan's Motion to Remand is GRANTED.  The Clerk is instructed to remand this action to the California Superior Court for Contra Costa County and to close the file in this Court.  The Court does not reach the parties' remaining motions.  Pursuant to the parties' stipulation (dkt. 8), because no court has yet resolved whether a preliminary injunction should issue, the temporary restraining order entered by the state court remains in effect.

**IT IS SO ORDERED.**

Dated: June 22, 2016.

JOSEPH C. SPERO
Chief Magistrate Judge